1
2
3
4
5
6
7
8   UNITED STATES DISTRICT COURT

9   CENTRAL DISTRICT OF CALIFORNIA

10

11  JENNIFER LAIR                      )   Case No. ED CV 12-932-SP
                                       )
12          Plaintiff,                 )
                                       )
13      v.                             )   MEMORANDUM OPINION AND
                                       )   ORDER
14                                     )
    CAROLYN W. COLVIN, Acting          )
15  Commissioner of Social Security    )
    Administration,                    )
16                                     )
            Defendant.                 )
17                                     )
    _____)
18

19                              **I.**

20                        **INTRODUCTION**

21          On June 15, 2012, plaintiff Jennifer Lair filed a complaint against

22  defendant, the Commissioner of the Social Security Administration

23  ("Commissioner"), seeking a review of a denial of supplemental security income

24  ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes

25  before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court

26  deems the matter suitable for adjudication without oral argument.

27          Plaintiff presents one disputed issue for decision:  (1) whether the holding

28  of the Administrative Law Judge ("ALJ") that plaintiff can perform jobs such as

                                        1

1  small products assembler I, office helper, and sewing machine operator was

2  inconsistent with her residual functional capacity ("RFC").  Plaintiff's Motion For

3  Summary Judgment For Remand Or Reversal ("Pl. Mem.") at 4-9; Memorandum

4  in Support of Defendant's Answer ("Def. Mem.") at 3-7.

5       Having carefully studied, inter alia, the parties's moving papers, the

6  Administrative Record ("AR"), and the decision of the ALJ, the court concludes

7  that, as detailed herein, the ALJ properly held that plaintiff could hold the jobs of

8  small products assembler I, office helper, and semi-automatic sewing machine

9  operator and that those jobs were not in excess of plaintiff's RFC.  Consequently,

10 this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

13      Plaintiff, who was thirty-four years old on the date of her February 3, 2011

14 administrative hearing, did not complete high school but has a GED.  AR at 26,

15 33, 52-53.  Her past relevant work was as a dispatcher and as a grocery store

16 service clerk.  AR at 19, 27-28, 77-84, 198-200.

17      On March 25, 2009, plaintiff filed an application for SSI due to bipolar

18 disorder and borderline personality disorder, with an onset date of November 3,

19 2008.  AR at 37-38, 90, 169.  The Commissioner denied plaintiff's applications

20 initially and upon reconsideration, after which she filed a request for a hearing.

21 AR at 88-91, 96, 101, 125.

22      On February 3, 2011, plaintiff, represented by counsel, appeared and

23 testified at a hearing before the ALJ.  AR at 10, 24, 26-34, 42-44, 63-75, 78-81.

24 The ALJ also heard testimony from Dr. David Glassmire, a medical expert, Cheryl

25 Lopez, plaintiff's mother, and David Rinehart, a vocational expert ("VE").

26 AR at 35-42, 45-62, 77-85.  On February 25, 2011, the ALJ denied plaintiff's

27 claim for benefits.  AR at 10-20.

28      Applying the well-known five-step sequential evaluation process, the ALJ

1  found, at step one, that plaintiff has not engaged in substantial gainful activity
2  since March 25, 2009, the protective filing date.  AR at 12.

3  At step two, the ALJ found that plaintiff suffers from the following severe
4  impairments: bipolar disorder; borderline personality traits; alcohol abuse; and
5  possible methamphetamine abuse.  *Id.*

6  At step three, the ALJ found that plaintiff's mental impairments, including
7  the substance use disorders, meet the listed impairments set forth in section 12.04
8  of 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 13.

9  The ALJ then began the "drug abuse and alcoholism analysis" ("DAA
10  Analysis").[1]  At step two, the ALJ found that if plaintiff stopped the substance
11  abuse, she would continue to suffer from a severe impairment or combination of
12  impairments.  *Id.*

13  At step three, the ALJ found that, if plaintiff stopped the substance abuse,
14  she would not have an impairment or combination of impairments that meets or
15  medically equals any of the impairments listed in 20 C.F.R. part 404, Subpart P,
16  Appendix 1.  AR at 13-14.

17

18  [1]  When a plaintiff's disabilities can, in whole or in part, be attributed to
19  substance abuse or alcoholism, the ALJ must conduct a "drug abuse and
20  alcoholism analysis . . . by determining which of the claimant's disabling
    limitations would remain if the claimant stopped using drugs or alcohol."  *Parra v.*
21  *Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (citing 20 C.F.R. § 404.1535(b)).  "In
22  other words, an ALJ must first conduct the five-step inquiry without separating out
    the impact of alcoholism or drug addiction."  *Bustamante v. Massanari*, 262 F.3d
23  949, 955 (9th Cir. 2001).  If the ALJ finds the claimant is disabled under the first
24  inquiry, then the ALJ must conduct a second inquiry "to determine if the claimant
    'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'"  *Id.*
25  (quoting 20 C.F.R. §§ 404.1535, 416.935).  "If the remaining limitations would
26  still be disabling, then the claimant's drug addiction or alcoholism is not a
    contributing factor material to his disability.  If the remaining limitations would
27  not be disabling, then the claimant's substance abuse is material and benefits must
28  be denied."  *Parra*, 481 F.3d at 747.

1    The ALJ then assessed plaintiff's RFC absent her substance abuse.[2]

2  AR at 14.  The ALJ found that, if plaintiff stopped the substance abuse, she would

3  have the RFC to perform a full range of work at all exertional levels with the

4  following nonexertional limitations: she is limited to simple, repetitive tasks; she

5  can engage in non-intense contact with coworkers and supervisors but is precluded

6  from interaction with the public; and she is precluded from any tasks involving

7  hypervigilence.  *Id.*

8    The ALJ found, at step four, if plaintiff stopped the substance abuse, she

9  would still be unable to perform any past relevant work.  AR at 18.

10    At step five, based upon plaintiff's RFC, vocational factors, and the VE's

11  testimony, the ALJ concluded that if she stopped the substance abuse "there would

12  be a significant number of jobs in the national economy that the [plaintiff] could

13  perform," including assembler of small products I, office helper, and semi-

14  automatic sewing machine operator.  AR 19-20.  Consequently, the ALJ

15  concluded that plaintiff's substance abuse was a "contributing factor material to

16  the determination of disability" and therefore plaintiff did not suffer from a

17  disability as defined by the Social Security Act.  AR at 20.

18    Plaintiff filed a timely request for review of the ALJ's decision, which was

19  denied by the Appeals Council on April 25, 2012.  AR at 1-3.  The ALJ's decision

20  stands as the final decision of the Commissioner.

21  ///

22  ///

23

24  _____

25    [2]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ
27  assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
F.3d 1149, 1151 n.2 (9th Cir. 2007).
28

# III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

///

///

///

# IV.

# DISCUSSION

Plaintiff argues that the ALJ erred at step five because he adopted the findings of the VE identifying jobs that plaintiff could perform even though those jobs were in excess of her RFC. Pl. Mem. at 4-9. Specifically, plaintiff contends that the identified jobs of assembler of small products I and semi-automatic sewing machine operator require hypervigilence, and the identified job of office helper requires contact with the public. *Id.* at 5-8. Because the ALJ determined that plaintiff's RFC precluded jobs that require, inter alia, hypervigilence and contact with the public, plaintiff claims that the ALJ erred. *Id.* at 4-9. The court disagrees.

At step five, the burden shifts to the ALJ to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ can meet this burden by: (1) the testimony of a VE, who can assess the claimant's limitations and identify any existing jobs the claimant can perform; or (2) relying on the Medical-Vocational Guidelines set forth in 20 C.F.R. part 404, Subpart P, Appendix 2. *Lounsburry*, 468 F.3d at 1114; *Tackett*, 180 F.3d at 1100-01. The ALJ may also rely on the Dictionary of Occupational Titles ("DOT") in evaluating whether the claimant is able to perform other work in the national economy. *Johnson*, 60 F.3d at 1435; *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons for any conflict. *Massachi*, 486 F.3d 1152-53; SSR 00-4p (an ALJ "has an affirmative responsibility to ask about any possible conflict between the [VE's testimony] and information provided in the DOT").

1   "In order for an ALJ to accept vocational expert testimony that contradicts the

2   [DOT], the record must contain persuasive evidence to support the deviation."

3   *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks

4   and citation omitted).  "Evidence sufficient to permit such a deviation may be

5   either specific findings of fact regarding the claimant's residual functionality, or

6   inferences drawn from the context of the expert's testimony."  *Light v. Soc. Sec.*

7   *Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (internal citation omitted).

8           The ALJ here, at step five, relied on the testimony of the VE to determine

9   whether plaintiff, given her RFC, could perform other jobs that exist in significant

10  numbers in the national economy.  AR at 20, 83-84.  The VE testified that the jobs

11  of assembler of small products I, office helper, and semi-automatic sewing

12  machine operator were examples of jobs that someone with plaintiff's RFC could

13  perform and that exist in significant numbers locally and nationally.  AR at 83.

14  After the ALJ inquired, the VE also testified that his testimony that someone with

15  plaintiff's RFC could perform the identified jobs is consistent with the DOT.

16  AR at 84.  Accordingly, the ALJ found that plaintiff could perform, among other

17  jobs, the occupations of small products assembler I, office helper, and semi-

18  automatic sewing machine operator.  AR at 20.

19          Based on the DOT description, the duties of a small products assembler I

20  (DOT 706.684-022) require "[l]oad[ing] and unload[ing] previously setup

21  machines, such as arbor presses, drill presses, taps, spot-welding machines,

22  riveting machines, milling machines, or broaches, to perform fastening, force

23  fitting, or light metal-cutting operation on assembly line."  Plaintiff contends that

24  loading and unloading these "dangerous machines" would require plaintiff to

25  maintain a state of hypervigilence, contrary to her RFC.  Pl. Mem. at 6.

26          The Commissioner counters by arguing that the operation of "dangerous

27  machines" is akin to exposure to "hazardous machinery" as defined by Social

28

Security Ruling ("SSR") 96-9.[3]  Def. Mem. at 5.  Under SSR 96-9, work with "hazardous machinery" includes "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9.   Because none of these hazards are listed in the job description for assembler of small products, the Commissioner argues, these jobs are not in excess of plaintiff's RFC.  Def. Mem. at 5.

The job description for assembler of small products I states that work with proximity to moving mechanical parts is not required.  DOT 706.684-022.  Courts are divided on the question of whether an assembler of small products is a job that requires work around "dangerous machinery."  *Compare Shannon v. Astrue*, 2011 WL 3420846, at *2-3 (C.D. Cal. Aug. 4, 2011) (holding that assembler of small products I did not require work with "dangerous equipment" in contravention of the plaintiff's RFC) *and Ballesteros v. Astrue*, 2011 WL 836656, *3-4 (C.D. Cal. Mar. 8, 2011) (holding that "there does not appear to be an inherent conflict between plaintiff's RFC [that precludes work involving hypervigilence and work with motorized equipment] and the DOT description of the small products assembler occupation"), *with Jimenez v. Astrue*, 2012 WL 1067945, *1, *4 (C.D. Cal. Mar. 29, 2012) (holding that "the requirements of the job[] of small products assembler I . . . are inconsistent with plaintiff's residual functional capacity [that precludes work involving dangerous machinery or hypervigilence].").

---

[3]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1    Here, however, plaintiff's RFC only included a restriction on jobs that

2    require hypervigilence and did not include a limitation on the use of motorized

3    equipment or dangerous machinery.  AR at 20.  Plaintiff has only made conclusory

4    assertions that preclusion from tasks involving hypervigilence is the same as

5    preclusion from work involving dangerous machinery.  Pl. Mem. at 6.  As such, it

6    is not at all apparent that the VE's testimony that plaintiff could perform the job of

7    small products assembler I deviates from the DOT.  Also, plaintiff's counsel did

8    not question the VE regarding this alleged conflict at the hearing before the ALJ.

9    AR at 84-85.  Because the VE testified that there was no conflict between

10   plaintiff's RFC and the DOT and because plaintiff's counsel did not question the

11   VE regarding any alleged inconsistencies between the DOT and plaintiff's RFC,

12   the ALJ was entitled to rely upon the VE's testimony.  SSR 00-4p; *Massachi,* 486

13   F.3d at 1153 (9th Cir. 2007).  Thus, plaintiff has not shown that the ALJ's decision

14   that she could perform the job requirements of assembler of small products was

15   not supported by substantial evidence.  Accordingly, the ALJ did not err in relying

16   on the testimony of the VE with respect to the job of assembler of small

17   products I.

18      With respect to occupation of office helper (DOT 239.567-010), the duties

19   of that position may require an employee to "deliver items to other business

20   establishments" or to "deliver stock certificates and bonds within and between

21   stock brokerage offices and be designated Runner."  DOT 239.567-010.  Plaintiff

22   contends that these job requirements include interaction with the public, in conflict

23   with plaintiff's RFC that she have no public contact.  Pl. Mem. at 7.  The court

24   disagrees.

25      The job description for office helper indicates that an employee "may" be

26   required to perform those tasks.  When the word "may" is used in a job description

27   it only means that some establishments will require that job function; it does not

28   mean that all employees will be required to perform that job function some of the

9

1   time.  DOT, Parts of the Occupational Definition, § 5(c); 1991 WL 645965 ("The
2   word 'May' does not indicate that a worker will sometimes perform this task but
3   rather that some workers in different establishments generally perform one of the
4   varied tasks listed.").  Moreover, the DOT does not require that a person be able to
5   perform all of the listed duties of the job, but rather "any combination" of them.
6   *See* DOT 239.567-010; *see also Johnson*, 60 F.3d at 1435 (stating that the DOT
7   "provides only occupational information on jobs as they have been found to occur,
8   but they do not coincide in every respect with the contents of jobs as performed in
9   particular establishments or at certain localities") (citation omitted).  Thus, the
10  ALJ's determination that plaintiff could perform work as an office helper was not
11  in conflict with the VE's testimony or with the DOT.  *See Biddie v. Astrue*, 2012
12  WL 4829299, at *6-7 (E.D. Cal. Oct. 10, 2012) (holding that a plaintiff could
13  perform the job requirements of office helper despite the fact that she had an RFC
14  stating that she should "not interact with the public").

15       With respect to the job of semi-automatic sewing machine operator (DOT
16  786.685-030), the duties of that job as defined by the DOT include that an
17  employee "[m]ay change needles and oil machine."  Plaintiff contends that
18  because this job would require plaintiff to change needles on a sewing machine,
19  the job requires hypervigilence, which is in excess of her RFC.  Pl. Mem. at 8.
20  The court disagrees.

21       As discussed above, the permissive "may" language in a job description
22  only means that the mentioned duty will be required in some jobs, not that it will
23  be sometimes required in all jobs.  DOT, Parts of the Occupational Definition,
24  § 5(c); 1991 WL 645965.  Moreover, though the job description for semi-
25  automatic sewing machine operator states that work with "[m]oving mech[anical]
26  parts" occurs up to one-third of the time, the description that a job requires the use
27  of a machine with moving parts does not necessarily mean that the machine is
28  dangerous.  *See Carrillo v. Astrue*, 2012 WL 4107824, *5 (C.D. Cal. Sept. 18,

1   2012) (holding that work with a sewing machine is not work with "hazardous
2   machinery," even though a sewing machine has moving parts).  Plaintiff offers no
3   evidence that sewing machines subject their operators to bodily injury or that they
4   require hypervigilence to operate, aside from the fact that she would be may be
5   required to change sewing machine needles.  Pl. Mem. at 8.  These bare assertions
6   cannot meet plaintiff's burden of showing that the ALJ's findings were not
7   supported by substantial evidence.  Therefore, the ALJ did not err in relying on the
8   testimony of the VE with respect to the job of semi-automatic sewing machine
9   operator.

10      Even if the ALJ's findings regarding the occupations of assembler of small
11  products I and semi-automatic sewing machine operator were in error because
12  those jobs require hypervigilence in excess of plaintiff's RFC, any error was
13  harmless because the ALJ properly identified the office helper job.  *See*
14  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)
15  (explaining that harmless error analysis applies to an ALJ's decisions); *Gallo v.*
16  *Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011) (holding that
17  "[b]ecause the ALJ satisfied his burden at Step 5 by relying on the VE's testimony
18  about the Addresser job, any error that the ALJ may have committed by relying on
19  the testimony about the "credit checker" job was harmless.").

20      Accordingly, the court concludes the ALJ did not err at step five, and even
21  if he did, any alleged error was harmless.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, denying plaintiff's motion for summary judgment, and dismissing the complaint with prejudice.

DATED: March 25, 2013

SHERI PYM
United States Magistrate Judge